# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lawrence L. Lillie,

      Petitioner,

v.

M. Cruz,

      Respondent.

Civil No. 09-506 (DWF/JJG)

**REPORT AND RECOMMENDATION**

JEANNE J. GRAHAM, United States Magistrate Judge

Petitioner Lawrence L. Lillie brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He alleges that prison officials did not comply with the provisions of the Second Chance Act of 2007, Pub. L. No. 110-199, § 251, 122 Stat. 657, 692-93 (2008) ("Second Chance Act") (codified at 18 U.S.C. § 3624(c)), in assessing his placement at a community correctional facility.[1]  This case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.  For the reasons discussed below, the Court recommends that the petition be denied.

## I.    BACKGROUND

Petitioner Lawrence L. Lillie ("Lillie") is currently incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth").  Respondent M. Cruz ("Cruz") is the Warden of that facility.

Lillie's good conduct release date is March 29, 2010.  Pursuant to FPC-Duluth policy, he was reviewed for placement in a community correctional facility approximately seventeen to

---

[1]    Though various authorities use phrases such as "residential reentry center," "community correctional center," and "halfway house," this Court will employ the term "community correctional facility" throughout this Report and Recommendation, in the interests of clarity and uniformity.

nineteen months before his release date, on November 19, 2008. The unit team considered factors such as the resources of the possible facility, the nature and circumstances of Lillie's offense, Lillie's record of outstanding performance and participation in prison programs, his strong family support and community resources, his work and life skills, and his likely residence. The unit team ultimately recommended that Lillie receive a 120- to 150-day period of placement in a community correctional facility.

This recommendation surprised and disappointed Lillie, who had hoped for a nine-month placement. Lillie had taken many training and educational courses in preparation for reentering the workforce, and his work performance reviews were outstanding. He had volunteered on many occasions, even receiving a President's Volunteer Service Award. In short, his behavior was exemplary. Lillie believed that his accomplishments and conduct would result in a longer placement at a community correctional facility. He therefore sent two informal resolution requests to his case manager, Mr. Witte, on January 27 and February 17, 2009, questioning the result of his assessment. Mr. Witte responded that Lillie had been assessed according to the relevant factors, and that a 120- to 150-day placement would be of sufficient duration to successfully reintegrate him into the community. Lillie did not file any formal requests for an administrative remedy.

In his § 2241 petition, Lillie asserts that his unit team failed to conduct an individualized evaluation of his suitability for placement and argues that a longer placement would afford him a greater opportunity for success upon release. Lillie acknowledges he has not complied with the administrative exhaustion requirement, but asks the Court to excuse the deficiency because of the limited amount of time between the unit team's decision and his good conduct release date. Cruz challenges Lillie's failure to exhaust, as well as the merits of Lillie's claim.

2

## II. DISCUSSION

### A. Exhaustion

Ordinarily, a federal prisoner wishing to challenge an action of the Bureau of Prisons ("BOP") must first exhaust his administrative remedies before he may seek redress in a § 2241 petition. *See Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974). However, "because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional," a court may proceed to the merits of the petition without regard to the exhaustion requirement. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (citations omitted). Thus, the Court need not decide whether Lillie has failed to exhaust his administrative remedies, or whether the grievance procedure would provide an adequate remedy, because as explained below, his petition fails on the merits.

### B. The Second Chance Act

Title 18 U.S.C. § 3624 governs release procedures for federal inmates, and of particular relevance here, the requirements for assessing inmates for prerelease custody. As amended by the Second Chance Act, § 3624(c) requires the BOP to ensure, to a practical extent, "that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1). To effect this requirement, the BOP was charged with promulgating regulations to "ensure that placement in a community correctional facility by the [BOP] is (A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6). Section

3621(b) authorizes the BOP to designate the place of imprisonment after giving consideration to

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Twelve months is the maximum amount of time an inmate may spend at a community correctional facility; there is no statutory minimum. *See* 18 U.S.C. § 3624(c)(1). Indeed, the statute does not ensure that an inmate will be placed at a community correctional facility at all. *See id.* ("Such conditions *may* include a community correctional facility.") (emphasis added). Thus, while prison officials are required to determine an inmate's placement on an individual basis by taking specific statutory criteria into account, and must ensure that the placement is long enough to provide the greatest likelihood of successful reentry into society, the BOP has discretion to determine whether an inmate should be placed in a community correctional facility and for how long. *See Stanko v. Rios*, Civ. No. 08-4991 (JNE/JJG), 2009 WL 1303969, at *2-3 (D. Minn. May 8, 2009); *Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 317 (D. Conn. 2009) (citation omitted).

Lillie asserts that his unit team did not make an individualized determination, emphasizing that his individual accomplishments and behavior should have resulted in a longer placement. He also contends that the recommended placement will not provide him with the greatest likelihood of successful reintegration upon his release.

The Court cannot conclude that the BOP failed to meet its statutory obligations or abused

its discretion in either respect. Lillie's unit manager, Mr. Baker, evaluated Lillie on a one-page, preprinted form. Following the factors outlined in § 3621(b), Mr. Baker considered the nature of Lillie's offense: specifically, that Lillie was a comptroller who had been involved in a mortgage loan fraud scheme, and which had resulted in a loss of $6,480,000. Mr. Baker rated Lillie's educational and vocational preparation, financial responsibility participation, and RPP participation as "good," and his work performance as "outstanding." He noted that Lillie had no prior criminal record or disciplinary problems at FPC-Duluth. Mr. Baker noted that Lillie had been sentenced below the guideline range but that the sentencing court had not made a relevant statement. Mr. Baker found that Lillie had family support, specialized and general job skills, a residence, life skills, and community resources, but no financial resources or promise of employment. Finally, although topics relating to the resources of the community correctional facility were listed on the form, Mr. Baker made no individualized notations concerning this factor. The lack of notation, however, does not necessarily mean that Mr. Baker failed to consider the listed topics. Nor does Mr. Baker's failure to provide a narrative explanation for his assessments mean that he did not consider Lillie on an individual basis. In sum, the Court finds that Mr. Baker properly considered Lillie's individual factors in evaluating him for placement in a community correctional facility.

As for the length of the recommended placement, § 3624(c)(6) does not provide for the longest possible placement, but only for a placement long enough to provide the greatest likelihood of successful reentry into society. Lillie has not shown that 120 to 150 days will be insufficient to meet this standard. Although he claims that the skills he has attained in prison will degrade while he waits to be placed, and that he needs additional time to adjust to a new career, this is true for nearly every inmate reentering the community. In addition, while Lillie's

conduct and accomplishments at FPC-Duluth were exemplary, § 3624(c)(6) does not suggest that the length of placement in a community correctional facility should be commensurate with an inmate's institutional behavior.

### C.    Additional Arguments

The Court will briefly address some peripheral points Lillie has raised.  According to Lillie, officials at FPC-Duluth changed the amount of his restitution payment from $25 a quarter, which was the amount set by the sentencing court, to $300 a quarter.  This had no impact on Lillie's assessment for community correctional facility placement, however, as his financial responsibility participation was rated as good.  Moreover, the record indicates that Lillie agreed to the increased amount.  On an informal grievance form Lillie submitted to prison staff regarding the restitution amount, he wrote he "would like  . . . to revise the document that I signed earlier indicating my willingness to comply with your direction."  (Pet. Ex. I.)  The Court finds that the prison's action was neither punitive nor relevant to the placement decision.

Next, Lillie suggests that the BOP has admitted its regulations do not comply with its statutory mandate, based on a passage from an interim rule published in the Federal Register in October 2008.  At that time, the BOP was soliciting comments for its revised regulations on community confinement.  The BOP explained that its regulations were being revised because they conflicted with the goals of the newly enacted Second Chance Act "by articulating a categorical exclusion that would preclude individual determinations."  Pre-release Community Confinement, 73 Fed. Reg. 62,440-01, 62442 (Oct. 21, 2008) (codified at 28 C.F.R. § 570.20-.22).  Lillie misinterprets the BOP's statement as a criticism on its current, revised regulations, but the statement clearly pertains to the regulations as they were worded prior to revision.

Finally, Lillie asks the Court to order the BOP to place him at a community correctional

facility in Roseville or Minneapolis. However, Congress has granted the BOP authority to make placement decisions, *see* 18 U.S.C. § 3621(b), and the Court has no authority to make such an order.

## III. CONCLUSION

The Second Chance Act does not require the BOP to place prisoners in community correctional facilities for a particular period of time, or indeed, for any time at all. In Lillie's case, he should be commended on his accomplishments and conduct during his incarceration. By all accounts, he is an outstanding worker who has diligently prepared to reenter the workforce and society at large, who has sought opportunities for personal rehabilitation, and who has exhibited model behavior. However, this good conduct does not render the BOP's decision invalid. The BOP followed its statutory mandate to assess Lillie for placement on an individualized basis and to ensure that the placement was of sufficient duration, and the BOP did not abuse its discretion in deciding whether and when Lillie should be placed in a community correctional facility.

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Lawrence L. Lillie's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**.

Dated: August 17, 2009                                  s/ *Jeanne J. Graham*

                                                JEANNE J. GRAHAM
                                                United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **August 31, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.